JAMES S. AND WILLIAM F. PIERONNET, PLAINTIFFS IN
ERROR, v. H. M. LULL AND J. M. COTTON, DEFENDANTS
IN ERROR.

**Promissory Notes:** DEFENSE: EVIDENCE. In an action on a
promissory note the defendants answered that it was given for
the balance due on an optional contract in grain in Chicago.
*Held,* That the testimony failed to establish the defense.

ERROR to the district court for Saline county.
Tried below before WEAVER, J.

*M. B. C. True,* for plaintiffs in error.

This case, as shown by the evidence, does not come
under the rule insisted on in the Rudolf case. 7
Neb., 125. There the contract was to "operate in
margins," to the purchase of margins upon grain to
be adjusted upon the difference in the market value.
In this case the grain itself was purchased and sold;
no one had any option except as to which one of the
thirty-one days in October the seller might make de-
livery. A transaction of this nature is supported by
*Pickering v. Case,* 79 Ill., 328, and by *Williams v. Tied-
eman,* 6 Mo. Ap. R., 269, as well as by two *nisi prius*
cases in circuit court of city of St. Louis—*Cobb v.
Houston,* decided February, 1879, and *Woods v. Smith,*
decided in April, 1879, and there does not seem to be
any reason against it. *Drake v. Miller,* Southern Law
Review, April, 1880, p. 383.

*Colby & Hazlett,* for defendants in error.

MAXWELL, CH. J.

This is an action upon a promissory note. The de-
fendants in their answer to the petition admit the
making of the note, but allege that the consideration

therefor was illegal in this: "that prior to the making of said note the said defendants were engaged as partners in the grain business at DeWitt, Saline county, Nebraska, and that said plaintiffs were, prior to the making of said note, grain and commission merchants in the city of Chicago, Illinois, and that prior to the making of said note, to-wit: on or about the first day of October, 1875, plaintiffs made an alleged purchase for said defendants of 5,000 bushels of barley on the board of trade in the city of Chicago, state of Illinois, commonly known as "option deal," wherein the seller had the privilege of delivering or not delivering the said grain, and the said defendants the privilege of calling or not calling the grain. And that the grain alleged to have been purchased was not paid for by said defendants, neither was the same in the possession of said defendants; and that the alleged purchase was merely fictitious; and that said plaintiffs and defendants were speculating in differences as to the market value of grain as aforesaid   *   *   * that said note was given on no other consideration whatever, to-wit: losses from the aforesaid option deal." There is also a count for a counter-claim. The plaintiffs in their reply deny the facts stated in the answer. It appears from the testimony of Mr. Lull, one of the defendants, that there was no final settlement between the parties from the time they commenced business until the time the note in question was given. His testimony, upon cross-examination, is as follows:

Q. From the time you commenced in August until you closed in October was there any settlement between you?

A. I don't think there was.

Q. Was there any settlement between you—Lull and Cotton and plaintiffs—until the giving of this note?

A.  Not that I know of.

J. S. Pieronnet, one of the plaintiffs, testifies that: "On or about October 1, 1875, we bought 5,000 bushels of barley on the order and for the account of Lull & Cotton. Said purchase was made for October delivery, and the seller having the option any day during October, 1875. We kept money in the bank to pay for said barley daily until the same was sold for account of Lull & Cotton. Seller was obliged to deliver the said barley during that month, and we were obliged to receive and pay for said barley when delivered. Our firm merely acted as agents for said Lull & Cotton without any interest in the transaction of their business further than the commissions we received and the interest on the money advanced thereon," etc. He also sets forth a statement of the account between the plaintiffs and defendants, from which it appears that the entire amount of the transactions between them for shipping, purchasing, and receiving grain was the sum of $5147.96, and extending from August, 1875, to about the first of January, 1876.

Charles Phelps testifies in substance on behalf of the plaintiffs that he transacted the principal part of the business, and that the purchase of the barley was a *bona fide* transaction.

The defendants both testify in substance that the note in question was given for the balance due on an option contract. But this testimony may be regarded as a mere assertion of a fact, and is entirely disproved by their own cross-examination.

In the case of *Rudolf v. Winters*, 7 Neb., 125, the defendant in his answer alleged that it was "expressly agreed that the sum of money evidenced by this instrument should be and remain in his hands as the advance or capital deposited by defendant in error, as his portion of money to be invested in grain options

in Chicago, in which venture each party should receive a certain proportion of the profits and pay a certain proportion of the losses, and that their venture in such grain options resulted in a loss largely in excess of the amounts invested by the respective parties, which loss he paid, whereby the defendant in error became largely indebted to him." The court held that it could not sanction such a transaction, and we adhere to that decision. But in our opinion the testimony fails to bring this case within the rule there laid down. It follows that the judgment of the district court must be reversed, and the cause remanded for a new trial.

REVERSED AND REMANDED.